1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   LEONARD WONG, an individual;              No. 2:18-cv-00039-MCE-AC
     SCOTT ZAWADA, an individual;
12   MATTHEW ROSE, an individual;
     MATTHEW LEE, an individual; and
13   ROBERT WATSON, an individual,            **MEMORANDUM AND ORDER**

14                    Plaintiffs,

15         v.

16   CHRISTOPHER TOMASZEWSKI, an
     individual; MIKE MERRI, an individual;
17   and DOES 1 through 25, inclusive,

18                    Defendants.

19

20         Through the present lawsuit, Plaintiffs seek damages on sixteen different causes

21   of action against Defendants Christopher Tomaszewski and Mike Merri.  Plaintiffs claim

22   that they were scammed out of more than $300,000 by Defendant Tomaszewski, who

23   they describe as their attorney, and Tomaszewski's business partner, Defendant Merri.

24   According to Plaintiffs, Defendants pressured them to fund a business venture and then

25   used the monies so raised for their own purposes.

26         Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint,

27   made pursuant to Federal Rule of Civil Procedure 12(b)(6), on grounds that said

28   Complaint fails to state any viable claim against Defendants.  As set forth below,

                                            1

Defendants' Motion is GRANTED in part and DENIED in part.[1]

## BACKGROUND[2]

Defendant Christopher Tomaszewski is a business attorney practicing in the Sacramento area. According to Plaintiffs' Complaint, on or about August 12, 2014, Tomaszewski "approached his client and personal friend," Plaintiff Leonard Wong, about a business opportunity Tomaszewski was promoting. Pls.' Compl., ¶ 8. That business opportunity involved investing in a company that provided window-tinting film and was allegedly on the verge of securing a lucrative contract with the vehicle manufacturer Kia.

Both Tomaszewski and Merri subsequently negotiated this business prospect with Wong and four other investors, Plaintiffs Scott Zawada, Matthew Rose, Matthew Lee, and Robert Watson, between August 12, 2014 and August 29, 2014. Tomaszewski told Plaintiff Wong on numerous occasions that the proposal would "make money." Id. at ¶ 11. On August 29, 2014, in a further effort to induce Plaintiffs' investment, Defendants allegedly told Plaintiffs that if they did not invest that day the share price would increase. Having been told that and with no "due diligence other than trusting Defendants' word and explanation of the business opportunity," Plaintiffs invested a collective total of $315,000 towards the deal and delivered those funds to Tomaszewski. Id. at ¶¶ 12-13. After receiving those funds, Tomaszewski created two separate companies, Clearplex Direct, LLC ("Clearplex") and Clearvue International ("Clearvue"), and proceeded to operate those businesses with Defendant Merri. Despite that operational role, Plaintiffs' Complaint avers on numerous occasions without further factual explication that Tomaszewski acted as their attorney and was tasked in that capacity with forming both

---

[1] Having determined that oral argument was not of material assistance, the Court ordered the Motion submitted on the briefs pursuant to Local Rule 230(g).

[2] Unless otherwise indicated, the facts set forth in this Section are taken, at times verbatim, from the allegations contained in Plaintiffs' Complaint. ECF No. 1-1.

1    Clearplex and Clearvue.  See Compl., ¶¶ 19, 23, 25, 29, 93, 94.

2        In November of 2015, about a year-and -a-half after forming the companies,

3    Plaintiffs claim that Tomaszewski informed them that that Clearplex had become "cash

4    poor."  In the face of Defendants' threats to shut the company down, Plaintiffs negotiated

5    ownership of an increased share in Clearplex so that they could potentially recoup their

6    losses in an eventual sale.  In January 2017, Plaintiff asked to receive their money back

7    and requested tax documentation concerning the business.  Defendants continued to

8    refuse that request and, according to Plaintiffs, ultimately forced them to sign a "Non-

9    Disclosure Agreement and Distribution of Membership Agreement and General Release"

10   ("Agreement") before agreeing to provide any of the tax documentation.[3]  In addition,

11   according to Plaintiffs, despite being Plaintiffs' attorney, Tomaszewski "again threatened

12   that he would shut the company down and Plaintiffs would lose their investments" if they

13   refused to sign that Agreement.  Pls.' Compl. at ¶ 19.

14       In spite of the signed Agreement, Plaintiffs claim that Defendants still provided no

15   accounting until more than a year later.  When finally obtained, the accounting showed

16   that Tomaszewski had withdrawn some $200,000 from the business.  Plaintiffs aver that

17   upon inquiry Tomaszewski could provide no explanation why he did so.  This lawsuit

18   resulted.

19       Plaintiffs' Complaint asserts sixteen causes of action, including claims for, inter

20   alia, professional negligence, breach of fiduciary duty, the sale of unregistered

21   securities, and various state law claims sounding in fraud.  Defendants now move to

22   dismiss each and all of those claims on grounds that they are not adequately stated.

23   ////

24   ////

25

26   ─────────────────
     [3] Despite explicitly referring to the Agreement in their Complaint, Plaintiffs do not attach a copy.
     Defendants accordingly request that the Court take judicial notice of both the Agreement and an
27   Amendment thereto pursuant to Federal Rule of Evidence 201.  Those documents are attached to the
     Declaration of Lita M. Verrier as Exhibit A.  Because Plaintiffs' Complaint refers not only to the Agreement
28   itself, but also repeatedly references the general release contained therein, judicial notice is proper and
     Defendants' request is GRANTED.  See Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2017).

                                          3

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."

1   Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge

2   that actual proof of those facts is improbable, and 'that a recovery is very remote and

3   unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

4        A court granting a motion to dismiss a complaint must then decide whether to

5   grant leave to amend.  Leave to amend should be "freely given" where there is no

6   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

7   to the opposing party by virtue of allowance of the amendment, [or] futility of the

8   amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

9   Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

10  be considered when deciding whether to grant leave to amend).  Not all of these factors

11  merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

12  carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

13  185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

14  "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

15  Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

16  1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

17  1989) ("Leave need not be granted where the amendment of the complaint . . .

18  constitutes an exercise in futility . . . .")).

19

20                                    **ANALYSIS**

21

22       As a preliminary matter, Defendants assert the general release contained within

23  the February 3, 2017, Agreement (as judicially noticed above) bars the majority of

24  Plaintiffs' claims.[4]  Even a cursory reading of the Complaint, however, makes it clear

25  that Plaintiffs assert that they were essentially bullied into signing the Agreement by

26  Defendant Tomaszewski, who threatened, despite his purported role as Plaintiffs'

27       _____

         [4] Defendant's Notice of Motion asserts the release as grounds for dismissing all of Plaintiffs'
28   claims except for the Eleventh and Fourteenth Causes of Action, for fraud and deceit and for an
     accounting, respectively.

                                          5

1   attorney, that Clearplex would shut down and they would lose their investment if they

2   failed to do so.  Plaintiffs also claim that Tomaszewski refused to provide them with

3   documentation concerning their investment unless they signed the Agreement, despite

4   the fact that he did not actually provide the needed accounting for more than a year after

5   the fact.  As Plaintiffs point out, this undue influence and wrongful conduct may

6   invalidate the Agreement since Defendants purportedly used deceitful and wrongful

7   tactics in order to procure Plaintiffs' assent.  See Grady v. Easley, 45 Cal. App. 2d 632,

8   642 (1941).  Given Plaintiffs' allegations of undue influence, particularly from their own

9   attorney, Defendants' claim that Plaintiffs have "fail[ed] to cite a single allegation" in

10  support of their claim that they were fraudulently induced to sign the Agreement lacks

11  merit.  See Defs.' Reply, 2: 11-12.

12      Defendants' assertions that Plaintiffs' claims are time barred fare no better at this

13  stage of the proceedings.  Again, Defendants claim that virtually all of Plaintiffs' claims

14  are barred by running the statute of limitations from August of 2014, when Clearplex and

15  Clearvue were formed following Defendants' receipt of Plaintiffs' investment.  Because

16  Plaintiffs' lawsuit was not filed until November 21, 2017, more than three years later,

17  Defendants' assert that their claims are untimely.[5]  In response, however, Plaintiffs claim

18  that they were unaware of Defendants' wrongful scheme until 2017.

19      Under the one-year period applicable to claims against an attorney for

20  professional negligence under CCP § 340.6, which is the shortest of the limitations

21  period advanced by Defendants, time does not begin to run until the plaintiff discovers,

22  or could have discovered through reasonable diligence, the facts constituting the alleged

23  wrongful act or omission.  Here, Plaintiffs claim that they were "left in the dark" as to their

24  _____

25      [5] Defendants' Notice of Motion generally argues that virtually all of Plaintiffs' claims are time
    barred, but their supporting Points and Authorities rely only upon 1) the one-year statute of limitations for
26  an attorney's wrongful act or omission in accordance with California Code of Civil Procedure ("CCP")
    § 340.6; 2) the same one-year statute applicable to claims under the Securities Act; 3) the two-year statute
27  applicable to breach of oral contract under CCP § 339;  4) the three-year limitation period applicable to
    breach of fiduciary duty claims under CCP § 338(d); and 5) the three-year statute of limitations applicable
28  to conversion pursuant to CCP 338(c)(1).  Consequently, those claims are the only one that are
    considered herein.

investment and did not became aware of Defendant's wrongful conduct until Defendants finally provided financial documents to Plaintiffs in 2017. See Pls.' Opp., 9:1-4. Accordingly, Plaintiffs have sufficiently alleged that the statute of limitations has not run as to their professional negligence claims. Plaintiffs further contend that the same delayed accrual rationale operates to preserve their other causes of action as well. Defendants' reply does not take issue with those contentions, instead arguing only that Plaintiffs have not pled enough facts to show that they lacked knowledge sufficient to support a delay in accrual of the applicable limitations periods. For the reasons already stated, this is unpersuasive.

Having now addressed these preliminary arguments, the Court moves on to an analysis of the sufficiency of Plaintiff's substantive claims.

### A. Professional Negligence

In moving to dismiss Plaintiffs' First Cause of Action, for professional negligence, Defendants assert that there are no allegations as to just how or when Plaintiffs engaged Tomaszewski as their attorney, either expressly or impliedly, and that consequently no sufficient attorney-client relationship has been identified. According to Defendants, if any of the Plaintiffs cannot show that a duty was owed in this regard, their claim is subject to dismissal. Ventura County Humane Society v. Holloway, 40 Cal. App. 3d 897, 902 (1974); citing Amaya v. Home Ice, Fuel & Supply Co., 59 Cal. 2d 295, 307 (1963).

Contrary to Defendants' allegations, however, as indicated above, the Complaint states numerous times that Tomaszewski was the attorney for all five Plaintiffs at all time relevant to this matter. See Compl., ¶¶ 19, 23, 25, 29, 93, 94. Taking these allegations to be true as the Court must at this stage of the proceedings, this is sufficient for pleading purposes. Plaintiffs need not allege more at this juncture to survive a motion to dismiss.[6]

---

[6] Plaintiffs' reliance on Skarbrevik v. Cohen, 231 Cal. App. 3d 692 (1991) is misplaced. That case stands only for the proposition that corporate counsel does not owe a duty of care to nonclient shareholders, at least in the absence of a personal relationship of trust and confidence between the shareholder and counsel. Id. at 707. Here, unlike Skarbrevik, Plaintiffs allege that they had direct attorney-client relationships with Tomaszewski.

7

## B. Breach of Fiduciary Duty

Where confidence is placed by one person in the integrity of another, and where the person by such confidence obtains any control over the affairs of the other, a trust or fiduciary relationship is created. <u>Wolf v. Superior Court</u>, 107 Cal. App. 4th 25, 29 (2003); <u>Eisenbaum v. Western Energy Resources, Inc.,</u> 218 Cal. App. 3d 314, 322 (1990). As Plaintiffs point out, fiduciary roles can occur in numerous contexts, including common relationships like attorney-client, majority shareholders to minority shareholder, investment advisers, and the like. <u>See, e.g.,</u> <u>Neel v. Magan, Olney, Levy, Cathcart & Gelfand</u>, 6 Cal. 3d 176, 189 (1971) (attorney-client); <u>Jones v. H.F. Ahmanson & Co</u>., 1 Cal. 3d 93, 108 (1969) (shareholders); <u>Hasso v. Hapke</u>, 227 Cal. App. 4th 107, 140 (2014) (investment adviser).

Aside from statute of limitations allegations already rejected above, Defendants' challenge to Plaintiffs' Second Cause of Action, for breach of fiduciary duty, rests on the assertion that the existence of a fiduciary duty has not been sufficiently pled. Accepting Plaintiffs' factual allegations along with the reasonable inferences therefrom as true, however, as the Court must do, as stated above there are numerous references to Tomaszewski serving as all five Plaintiffs' attorney. In addition, a review of the Complaint as a whole shows that both Defendants are identified as having provided investment advice to Plaintiffs and owing a duty to Plaintiffs as officers and shareholders of the company. Pls.' Compl. at ¶¶ 28, 29, 86-88. 97-99. Under those circumstances a sufficient fiduciary duty has been identified.

## C. Breach of Oral Contract

Defendants' challenge to Plaintiffs' Third Cause of Action, for breach of oral contract, is limited to assertions that the general release contained within the Non-Disclosure Agreement, along with the applicable two-year statute of limitations, bars the claim. Both those arguments have already been rejected. A breach of contract claim accrues when the plaintiff discovers, or could reasonably have discovered, the breach and its cause. <u>Angeles Chemical Co., Inc. v. Spencer & Jones,</u> 44 Cal. App. 4th 112,

119 (1996).  As discussed above, given Plaintiffs' claims that Defendants did not provide the accounting from which Defendants' breaches were ascertained until 2017, Plaintiffs' lawsuit was filed well within that period.  See Gryczman v. 4550 Pico Partners, Ltd., 107 Cal. App. 4th 1, 4-5 (2003) (delayed discovery rule applies to breaches committed in secret such that the harm flowing therefrom is not reasonably discoverable until a future time).

### D.  Securities Violations

Plaintiffs assert three causes of action pertaining to securities violations.  In their Fourth Cause of Action, they allege that Plaintiffs' conduct amounted to the unregistered offer and sale of securities in violation of Section 12(a) the Securities Act of 1933 and its corresponding state-law statute, California Corporations Code § 25110.  Additionally, Plaintiffs' Fifth Cause of Action asserts fraud in the offer or sale of securities pursuant to Section 17(a) of the Securities Act.  Finally, for a Sixth Cause of Action, Plaintiffs allege another fraud claim in connection with the purchase or sale of securities, this time in violation of the Exchange Act of 1934.

Defendants assert that the Fourth Cause of Action fails because in order to state a viable Section 12(a) claim, Plaintiffs must demonstrate scienter on the part of Defendants at the time they marketed the subject investment opportunity to Plaintiffs.  Defendants further assert that as a claim sounding in fraud, Plaintiffs must also satisfy the heightened pleading standard inuring to a fraud claim under Federal Rule of Civil Procedure 9(b).

To satisfy the requisite state of mind element for scienter, Plaintiffs' Complaint must allege that Defendants made misleading statements either intentionally or with deliberate recklessness.  In re VeriFone Holdings, Inc. Sec. Lltig., 704 F.3d 694, 701 (9th Cir. 2012).  Mere puffery, or alleged omissions without factual support adequate to show materiality, will not suffice.  See Police Retirement Systems of St. Louis v. Intuitive Surgical, Inc., 2012 WL 1868874 at *12-13 (N.D. Cal. May 2012).  Defendants maintain that Plaintiffs' Section 12(a) claim cannot survive scrutiny under that standard.

9

Plaintiffs have not pled sufficient facts to show scienter on Defendants' part at the time Defendants obtained their investment. According to the Complaint, Defendants solicited Plaintiffs' involvement with a pitch that they "had an enormous contract with the vehicle manufacturer Kia that was about to happen and . . . would soon be making lots of money." Compl, ¶ 10. Plaintiff Wong goes on to reiterate that Tomaszewski told both him and his family on "numerous occasions" that the investment would "make money." Id. at ¶ 11. None of these allegations suggest that Defendants had any belief at the time they solicited the investment that they were pushing a bad deal. Although Plaintiffs suggest that they later discovered that Tomaszewski could not explain why he withdrew some $200,000 from the business, that does not necessarily equate with a conclusion that Tomaszewski's motives were ulterior from the onset. Consequently, Plaintiffs' Fourth Cause of Action fails as presently constituted.

Plaintiff's Fifth Cause of Action also fails because by its terms it is expressly predicated on a violation of Section 17(a) of the 1933 Securities Act, and the Ninth Circuit has found that Section 17(a) does not provide a private cause of action. In re Washington Public Power Supply System Security Litig., 823 F.2d 1349, 1354 (9th Cir. 1987). Plaintiffs' only response is that the Washington case does not preclude related private remedies under Sections 11 and 12 of the 1933 Securities Act. Since the Fifth Cause of Action as now pled relies only on Section 17(a), however, that does not save the claim as it now stands.

Plaintiffs' final securities-related claim is that Sixth Cause of Action, which alleges fraud in violation of Section 10(b) of the Exchange Act of 1934. Under 10(b), a material misrepresentation or omission with regard to the sale of securities must also be made with scienter. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005); Zucco Partners, LLC. v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009). As stated above, the Court has already established that the Complaint does not adequately allege scienter. Consequently, the Sixth Cause of Action fails for the same reason already outlined with respect to the Fourth Cause of Action.

### E.  Unjust Enrichment

While Defendants attack Plaintiff's Seventh Cause of Action, for unjust enrichment, on grounds that California does not recognize any such claim, Plaintiff cites numerous cases suggesting otherwise, particularly where, as here, restitution is being sought.  See Pls.' Opp. 13:19-28.  In reply, Defendants conceded that "admittedly there is a split of authority as to whether unjust enrichment is a cause of action and whether a motion to dismiss is proper."  Reply, 7: 12-14.  Consequently, Defendant's request for dismissal as to the Seventh Cause of Action necessarily fails.

### F.  Violations of California Corporations Code

For an Eighth Cause of Action, Plaintiffs claim damages for the sale of securities through communications containing false statements and omissions in violation of California Corporations Code §§ 25401 and 25501. Inasmuch as § 25501 sets forth the liability provisions applicable to a violation of § 25401, whether or not Plaintiffs can state a cognizable claim under § 25401 becomes the salient inquiry.

As Defendants point out, § 25401 covers only affirmative misstatements of material facts and those omissions that render misleading statements made in connection with the sale or purchase of securities, and does not extend to simple nondisclosure.  Tse v. Ventana Medical Systems, 297 F.3d 210. 224-25 (3rd Cir. 2002). As such, the investor, here Plaintiffs, must show an untrue statement of material fact or a material omission tied thereto.  Here, the Court cannot identify just what untrue statements might give rise to liability under § 25401.  As indicated above, simply stating that the investment would "make money" may not suffice, since Defendants may well have truthfully believed that they were on the cusp of securing a lucrative contract with Kia.  Otherwise, the bulk of Plaintiffs' allegations, in the sense they relate to what Defendants should have told them but did not as the business proceeded, including how their investment was spent, would appear to relate to nondisclosure which is not actionable under § 25401.  Consequently, Defendants' request to dismiss the Eighth Cause of Action is granted.

11

### G. Unfair Business Practices

Plaintiffs' Ninth Cause of Action asserts that Defendants committed unfair business practices in violation of California Business & Professions Code § 17200. That section, as Plaintiffs allege, proscribes any "unfair," "unlawful," or "fraudulent" business act or practice. Pls.' Compl, ¶ 68. In now asserting that Plaintiffs' § 17200 claim is defective, Defendants allege that no violation of law has been satisfactorily pled. As Defendants concede, however, even if no specific violation of law has been adequately stated, Plaintiffs can still state a viable claim under either alternative prong of unfairness or fraud. With respect to unfairness, Defendants state only that § 17200 should not "give the courts a general license to review the fairness of contracts." Defs. Mot., 14: 10-11, citing Searle v. Wyndham International, Inc., 102 Cal. App. 4th 1327, 1334 (2002). Otherwise, Defendants state only that "no unfair business practice has been alleged against Defendants because the only allegations of 'unfair' activity relates to each Plaintiffs' own personal issues with their investments." Defs.' Mot, 14: 12-13. Defendants dispose of § 17200's "fraudulent" prong even more summarily, stating only that no fraud claims can be sustained.

The Court need look only at the "unfair" component of the statute to conclude that Plaintiffs have stated a viable claim for violation of § 17200 for pleading purposes. As alleged, however, this case goes far beyond any abstract notion of contractual fairness. As Plaintiffs point out, the Complaint alleges various forms of misfeasance, including forcing Plaintiffs to sign certain legal documents and withholding material information relating to the financial state of the company by failing to timely provide an accounting. Those allegations suffice as "unfair" practices for purposes of potential § 17200 liability. Therefore, Defendants' Motion to Dismiss, as directed to the Ninth Cause of Action, must fail.

### H. False Advertising

Plaintiffs' false advertising claim, as alleged in their Tenth Cause of Action, asserts that Defendants solicited and advertised, both in print and through statements

directed to them as customers, materially misleading and deceptive information in order to induce Plaintiffs to invest money. Pls.' Compl., ¶ 73. A claim for false or misleading advertising in violation of California Business & Professions Code § 17500 requires proof that: 1) Defendants intentionally or negligently disseminated an untrue or misleading statement with an intent to dispose of goods or services: 2) the statement was made in California and disseminated to the public in any state; and 3) the statement deceived and harmed Plaintiffs.

Defendants contend that because statements concerning the investment were made only to Plaintiffs, any such statements cannot have been "disseminated to the public" for purposes of triggering liability under § 17500. Defendants rely on Hernandez v. Sutter W. Capital, 2010 WL 539133 (N.D. Cal. Feb. 2010) to support that proposition, but Hernandez involved only statements made to a single individual, not five different investors and various family members of Plaintiff Wong, as the Complaint alleges. Id. at *5. Hernandez therefore does not stand for the proposition that Defendants' dissemination of information about the subject business opportunity cannot trigger liability under § 17500. Consequently, Defendants' basis for striking the Tenth Cause of Action fails.

### I. Fraud Claims

Plaintiffs assert two claims rooted explicitly in notions of common-law fraud. For an Eleventh Cause of Action, they allege Fraud and Deceit by Suppression of Facts. Then, in the Twelfth Cause of Action, Plaintiffs assert constructive fraud, citing the alleged fiduciary relationship between the parties, the breach of duties implicit in that relationship, and the requirement that Defendants disgorge any profits gained through that breach.

Defendants allege that both claims fail since Plaintiffs make only "conclusory allegations" that "are void of any real facts." Defs.' Mot., 15:18-20. Again, the Court disagrees. At least on the basis of the Complaint, Plaintiffs allege that fiduciary duties arose both because Tomaszewski was their attorney and because both Tomaszewski

13

and Merri were officers of the business formed as a result of Plaintiffs' investment. In the face of those duties, according to Plaintiffs, Defendants threatened to sell Clearplex because it was "cash poor," causing Plaintiffs to lose their investments entirely, unless Plaintiffs agreed to a restructuring of the company, the terms of which allegedly benefitted Defendants. Then, when Plaintiffs asked to receive their investment back and asked for an accounting, Defendants forced Plaintiffs to sign an Agreement that included a general release purporting to absolve Defendants of all liability, again under threats from Tomaszewski that he would shut Clearplex down and Plaintiffs would lose their investments. Defendants still refused to provide the promised accounting, even after exacting the Agreement and its included release. When they finally did so more than a year later the accounting showed that Tomaszewski had inexplicably withdrawn $200,000 from the business. The Complaint alleges that Tomaszewski failed to provide any explanation for that withdrawal, despite his claimed fiduciary status and his early representations that the company was "cash poor." While the Court is well aware of the heightened pleading standards that generally apply to fraud claims under Federal Rule of Civil Procedure 9(b), under the circumstances as a whole it must conclude that fraudulent conduct has been adequately alleged. In addition, given the alleged relationships between the parties, both in the attorney-client and business fiduciary context, the Court also cannot conclude justifiable reliance on Defendants' representations is lacking.

### J. Constructive Trust

Plaintiffs' Thirteenth Cause of Action, for Constructive Trust, is challenged on grounds that Plaintiffs have not stated facts sufficient to allege either a fiduciary duty or fraud. Those claims have already been rejected for the reasons stated above, and consequently Defendants' Motion to Dismiss must fail.

### K. Accounting

Defendants challenge Plaintiff's Fourteenth Cause of Action, which seeks an accounting, on grounds that Plaintiffs have conceded in their Complaint, at paragraph

14

20, that Defendants ultimately provided one. According to Defendants, because Plaintiffs have not alleged any deficiencies in the accounting already provided, their renewed request is moot and should be denied.

As Plaintiffs point out, however, their accounting request is not limited to either Clearplex or Clearvue, the two companies that Tomaszewski established after receiving their investment funds. Instead, in their Fourteenth Cause of Action, Plaintiffs assert, on information and belief that, as a result of Defendants' conduct as outlined throughout the Complaint, Defendants in fact diverted Plaintiffs' investment into Defendants' "own businesses or assets," and it is an accounting of those transactions and accounts that Defendants now seek. See Pls.' Compl., ¶¶ 105-107. Those allegations support a plausible accounting claim under the circumstances of this matter and are sufficient to withstand Defendants' dismissal request.

### L. Conversion

To support a conversion claim, Plaintiffs must show: 1) their ownership or right to the investment funds in question; 2) Defendant's wrongful conversion or disposition of that investment; and 3) damages. See Lee v. Hanley, 61 Cal. 4th 1225, 1240 (2015). Defendants argue that the claim fails because Plaintiffs willingly invested the funds and are upset only because they did not obtain the return deserved, and cite authority for the proposition that this is not an appropriate basis for a conversion claim. McKell v. Washington Mutual, Inc., 142 Cal. App. 4th 1457, 1491-92 (2006).

The alleged circumstances of this case, however, extend far beyond those parameters. Here, Plaintiffs claim that after obtaining their funds, Defendants "misappropriated the Plaintiffs' investment for Defendants' own use," and have refused to account for those misappropriated funds even following Plaintiffs' demand that they be accounted for. Pls. Compl, ¶¶ 110-11. As Plaintiffs point out, a conversion can occur when a willful failure to return property deprives the owner of possession. Fearon v. Dept. of Corrections, 162 Cal. App. 3d 1254, 1257 (2015). Plaintiffs have stated a viable conversion claim for pleadings purposes.

**M. Civil Conspiracy**

Plaintiffs' final and Sixteenth Cause of Action alleges a civil conspiracy on grounds that Defendants "knowingly and willingly conspired and agreed amongst themselves to fraudulently and wrongfully obtain the investment money from Plaintiffs." Pls.' Compl, ¶ 116.  Defendants allege that there is civil claim for conspiracy unless there is evidence of wrongful conduct in furtherance of the alleged conspiracy along with resulting damage.  They assert that because the Complaint pleads no facts as to the particulars of how they conspired to defraud Plaintiffs, the claim necessarily fails.  Here, as stated above, Plaintiffs claim that Defendants acted together to secure Plaintiffs' investment, then wrongfully misappropriated the funds for their own use, and have since refused to return those funds.   That is enough to allege conspiracy at this juncture.

**CONCLUSION**

For all the above reasons, Defendants' Motion to Dismiss (ECF No. 6) is GRANTED in part and DENIED in part.   Defendants' Motion is GRANTED as to the Fourth, Fifth, Sixth and Eighth Causes of Action and is otherwise DENIED.  Plaintiffs may amend their Complaint, should they choose to do so, not later than twenty (20) days after the date this Memorandum and Order is electronically filed.  Failure to file an amended pleading within those time parameters will result in the dismissal, with prejudice, of the affected causes of action without further notice.  In addition, should Plaintiffs decline to file an amended pleading and their federal claims are deemed dismissed with prejudice, this Court will decline to exercise jurisdiction over Plaintiffs' state claims and will remand this action to the Sacramento County Superior Court.

IT IS SO ORDERED.

Dated:  September 26, 2018

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

16