UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LEONARD WONG, an individual;
SCOTT ZAWADA, an individual;
MATTHEW ROSE, an individual;
MATTHEW LEE, an individual; and
ROBERT WATSON, an individual,

Plaintiffs,

v.

CHRISTOPHER TOMASZEWSKI, an individual; MIKE MERRI, an individual; and DOES 1 through 25, inclusive,

Defendants.

No. 2:18-cv-00039-MCE-AC

**MEMORANDUM AND ORDER**

Through the present lawsuit, Plaintiffs seek damages on fourteen different causes of action against Defendants Christopher Tomaszewski and Mike Merri. Plaintiffs claim that they were scammed out of more than $300,000 by Defendant Tomaszewski, who they describe as their attorney, and Tomaszewski's business partner, Defendant Merri. According to Plaintiffs, Defendants pressured them to fund a business venture and then used the monies so raised for their own purposes.

Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") made pursuant to Federal Rule of Civil Procedure 12(b)(6),

///

on grounds that the FAC fails to state any viable claim against Defendants. As set forth below, Defendants' Motion is GRANTED in part and DENIED in part.[1]

**BACKGROUND**[2]

Defendant Christopher Tomaszeski is a business attorney practicing in the Sacramento area. According to Plaintiffs' FAC, on or about August 12, 2014, Tomaszewski "approached his client and personal friend," Plaintiff Leonard Wong, about a business opportunity Tomaszewski was promoting. FAC, ¶ 8. That business opportunity involved investing in a company that provided window-tinting film and was being marketed to the vehicle manufacturer Kia.

Both Tomaszewski and Merri subsequently negotiated this business offer with Wong and four other investors, Plaintiffs Scott Zawada, Matthew Rose, Matthew Lee, and Robert Watson, between August 12, 2014, and August 29, 2014. Defendants told Plaintiffs that they "had an enormous contract" with Kia that "was about to happen" and "would soon be making substantial amounts of money." Id. at ¶ 10. According to Plaintiffs, at the time these statements were made Defendants knew their statements were false and did not believe the purported "contract" with Kia was a viable business opportunity. Id. Nonetheless, Defendant Tomaszewski allegedly reiterated to Plaintiff Wong on numerous occasions that the proposal would "make money," despite the fact that he knew otherwise. Id. at ¶ 11.

On August 29, 2014, in a further effort to induce Plaintiffs' investment, Defendants allegedly told Plaintiffs that if they did not invest that day the share price would increase. Having been told that and with no "due diligence other than trusting Defendants' word and explanation of the business opportunity," Plaintiffs invested a collective total of

---

[1] Having determined that oral argument was not of material assistance, the Court ordered the Motion submitted on the briefs pursuant to Local Rule 230(g).

[2] Unless otherwise indicated, the facts set forth in this Section are taken, at times verbatim, from the allegations contained in Plaintiffs' FAC. ECF No. 20.

2

$315,000 towards the investment and delivered those funds to Tomaszewski. Id. at ¶¶ 12-13. After receiving those funds, Tomaszewski created two separate companies, Clearplex Direct, LLC ("Clearplex") and Clearvue International ("Clearvue") and proceeded to operate those businesses with Defendant Merri. Despite that operational role, Plaintiffs' FAC avers on numerous occasions without further factual explication that Tomaszewski acted as their attorney and was tasked in that capacity with forming both Clearplex and Clearvue. See FAC, ¶¶ 19, 23, 25, 29, 93.

In November of 2015, about a year and half after forming the companies, Plaintiffs claim that Tomaszewski informed them that Clearplex had become "cash poor." In the face of Defendants' threats to shut the company down, Plaintiffs negotiated ownership of an increased share in Clearplex so that they could potentially recoup their losses in an eventual sale. In January of 2017, Plaintiffs asked to receive their money back and requested tax documentation concerning the business. Defendants continuously refused that request and, according to Plaintiffs, ultimately forced them to sign a "Non-Disclosure Agreement and Distribution of Membership Agreement and General Release" ("Agreement") before agreeing to provide any of the tax documentation.[3] In addition, according to Plaintiffs, despite being Plaintiffs' attorney, Tomaszewski "again threatened that he would shut the company down and Plaintiffs would lose their investments" if they refused to sign that Agreement. Id. at ¶ 19.

Despite signing the Agreement on or about February 3, 2017, Plaintiffs claim that Defendants still provided no accounting until more than a year later. When finally obtained, the accounting showed that Tomaszewski had withdrawn some $200,000 from the business. Plaintiffs aver than upon inquiry Tomaszewski could provide no explanation for why he did so. This lawsuit resulted.

---

[3] Despite explicitly referring to the Agreement in their FAC, Plaintiffs do not attach a copy. Defendants accordingly request that the Court take judicial notice of both the Agreement and an Amendment thereto pursuant to Federal Rule of Evidence 201. Those documents are attached to the Declaration of Mike Merri as Exhibit A. Because Plaintiffs' FAC refers not only to the Agreement itself, but also repeatedly references the general release contained therein, judicial notice is proper and Defendants' request is GRANTED. See Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2017).

Plaintiffs' original complaint contained sixteen causes of action, including claims for, inter alia, professional negligence, breach of fiduciary duty, the sale of unregistered securities, and various state law claims sounding in fraud. Defendants filed a motion to dismiss that complaint for failure to state any viable claim on January 16, 2018. By Memorandum and Order filed September 27, 2018 (ECF No. 19), the Court denied that motion, except with respect to the Fourth, Fifth, Sixth and Eighth Causes of Action, which alleged various securities violations under both federal and state law. The Court explicitly rejected Defendants' arguments that Plaintiffs' claims were either precluded under the terms of the February 2017 Agreement or barred by applicable statutes of limitations. In addition, it rejected Defendants' challenges to Plaintiffs' common law state claims.

Because the Court afforded Plaintiffs leave to amend, the operative FAC was filed on October 17, 2018. While largely unchanged from its predecessor, and containing the same sixteen causes of action, the FAC nevertheless included several additional allegations that Defendants knew their statements about the business deal they touted were false and/or fraudulent. See FAC, ¶¶ 10, 11, 51. Defendants responded by filing, on October 17, 2018, their second motion for dismissal, and that motion is now before the Court for adjudication. ECF No. 21.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

The Court's review of Defendants' motion indicates that it repeats many of the arguments made, and already rejected, in the context of their initial motion to dismiss. Defendants repeatedly allege, for example, that Plaintiffs' claims are barred by either the February 2016 Agreement or the applicable statute of limitations, despite the fact the Court already found those contentions unpersuasive. See September 27, 2018 Mem. and Order, ECF No. 19, pp. 5-7. In addition, Defendants' challenges to the Seventh, Eleventh, Twelfth, and Sixteenth Causes of Action, which allege unjust enrichment, fraud, constructive fraud, and civil conspiracy, respectively, were also previously made and rejected. See id. at 13:19-14:20; 16:1-11.[4] As such, Plaintiffs attempt to take another bite at those already rejected arguments is improper and will not be considered.
///

---

[4] The Court recognizes that its previous Order rejected Defendants' challenge to the unjust enrichment cause of action on grounds that there is a split in authority under California law as to the viability of that claim. See id. at 11:6-13. Nonetheless, Defendants' original motion to dismiss also included the argument that "there are no allegations as to how or when each Defendant has been unjustly enriched (ECF No. 6-1, 12:28-13:1), allegations that mirror those made again in the instant motion. Given Plaintiffs' allegation, both in the original complaint and in the FAC, that Defendant Tomaszewski withdrew $200,000 from the business and failed to provide any explanation as to why he had done so, any contention that no potential unjust enrichment has been identified is clearly misplaced.

1 | With respect to the Second Cause of Action, for breach of fiduciary duty, Defendants' previous challenge focused on whether any claim could be asserted against Defendant Tomaszewski, with Defendants noting that no allegations appeared to be directed against Mike Merri.  Defs.' Mot., ECF No. 6-1, 6:22-23.  Plaintiffs' opposition, while discussing only allegations levied against Tomaszewski, does indicate, at least in the caption to the argument, that claims were nonetheless being made as to both Defendants.  The Court's September 27, 2018, Order concluded that a viable breach of fiduciary claim had been stated against both Defendants.  ECF No. 19, 8:12-21.

Reexamination of the allegations against Defendant Merri as stated in the FAC, however, indicate that they are insufficient as pled.  Paragraphs 29 through 32 refer only to Defendant Tomaszewski, and state that only Tomaszewski "breached his duties of loyalty and good faith."  It is only in paragraph 33 that the FAC, in using the plural "Defendants," directly suggests that a claim may in fact be asserted against both Merri and Tomaszewski.  Given the lack of any direct allegations against Defendant Merri, the Court is forced to conclude that the Second Cause of Action is insufficient as to him, and consequently that claim is dismissed to the extent it may be construed as extending to Merri.

Defendants' initial challenge to the Third Cause of Action, for breach of oral contract, was limited to a contention that the claim failed because the statute of limitations had run.  In moving to dismiss the claim as stated in the FAC, however, Defendant argues that no charging allegations against him were made in any event.  Given allegations that both defendants negotiated the business offer by both email and verbal conversations, and induced Plaintiffs to accept the arrangement by representing that the share price would increase if they did not invest immediately, however, the Court believes that a potentially viable oral contract was entered into with both Defendants prior to Plaintiffs' investment of $315,000 on September 2, 2014.  See FAC, ¶¶ 12-13.  Therefore, the Third Cause of Action survives pleadings scrutiny.

///

We now turn to the causes of action that were dismissed by the Court's September 27, 2018 Memorandum and Order as not viable, repleaded in the FAC, and are now challenged once again through the instant Motion to Dismiss. The Fourth, Fifth, Sixth and Eighth Causes of Action all deal with securities violations, either under federal or state law.

Plaintiffs allege in their Fourth claim that Defendants conducted an unlawful sale of registered securities in contravention of Section 12(a) of the Securities Act of 1933 and its corresponding state law statute, California Corporations Code § 25110. The Court granted Defendants' initial motion to dismiss on grounds that Plaintiffs had failed to demonstrate scienter on the part of Defendants at the time they marketed the subject investment opportunity. As the Court previously pointed out in its September 27, 2018 Memorandum and Order, in order to satisfy the requisite state of mind element for scienter as required to state a Section 12(a) violation, Plaintiffs must allege that Defendants made misleading statements either intentionally or with deliberate recklessness. In re VeriFone Holdings, Inc. Sec. Litig., 704 F.3d 694, 701 (9th Cir. 2012). Plaintiffs' initial complaint was insufficient in this regard because none of the allegations suggested that Defendants had any belief at the time they solicited the investment from Plaintiffs that they were pushing a bad deal.

In the FAC, as indicated above, Plaintiffs now allege that at the time Defendants touted the anticipated contract with Kia "that would soon be making substantial amounts of money, "Defendants did not believe that this 'contract' . . . was a viable business opportunity" and in fact "defendants knew that their statements were false." FAC, ¶ 10. Plaintiffs further allege that Defendant Tomaszewski repeated these representations on numerous occasions both to Plaintiff Wong and to Wong's family, "despite the fact that [Tomaszewski] did not believe his comments to be true and in fact knew them to be false." Id. at ¶ 11. While Defendants still claim that these statements lack the requisite factual specificity, in the Court's view they are now sufficient to survive Defendants' dismissal request.

8

A new argument posited by Defendants in attacking the Fourth Cause of Action fares no better. While Defendants appear to argue that Plaintiffs have not identified a "security" disseminated through "interstate commerce" to come within the purview of Section 12(a), the FAC unequivocally states that Plaintiffs were induced to quickly buy stock in August 2014 with the "share price" increasing if they failed to act with the requisite speed. FAC, ¶¶ 12, 30. Thereafter, in November of 2015, the FAC goes on to allege that a "higher percentage of shares" was negotiated. Id. at ¶¶ 15-16.

The "touchstone" in determining whether a transaction involves the sale of the security "is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." United Housing Found., Inc. v. Forman, 421 U.S. 837, 852 (1975). Profits, in turn, means either capital appreciation resulting from the development of the initial investment or a participation in earnings resulting from use of an investor's fund. Id. Given the FAC's allegation that Plaintiffs purchased some $315,000 in shares with the expectation of "making substantial amounts of money" as return on that investment it appears plain that Plaintiffs were indeed offered and sold "securities." Moreover, the fact that the FAC specifically alleges that Defendants utilized email in negotiating with Plaintiffs for the purchase of the securities satisfied the interstate commerce element of a viable Section 12(a) claim. See SEC v. Blockvest LLC, 2018 WL 4955837 at * 6 (S.D. Cal. October 5, 2018) (interstate commerce implicated where the defendant uses either the telephone, internet or e-mail to accomplish fraud in the sale of a security). Consequently, Defendants' Motion as to the Fourth Cause of Action is denied.

Defendants' challenge to the Fifth Cause of Action is solely based on the fact the caption on the title page of the FAC still refers to Section 17(a) of the Securities Act of 1933 despite the fact that the body of the claim (including the title of the cause of action within the FAC itself) omits any reference whatsoever to Section 17(a). Given this discrepancy, Defendants once again urge the Court to dismiss the claim, since Section 17(a) does not provide a private cause of action. In re Washington Public Power

Supply System Security Litig., 823 F.2d 1349, 1354 (9th Cir. 1987).  Plaintiffs' opposition, however, makes it clear that their failure to correct the title page was simple inadvertence, and that the body of the Fifth Cause of Action states a claim for fraudulent misrepresentation, only.  Given that representation, the Court will conform the caption page to correspond with the nomenclature used to describe the Fifth Cause of Action within the FAC itself (Fraud in the Offer of Sale of Securities).  Consequently, with that caveat, Defendants' dismissal request as to the Fifth Cause of Action is also denied.

Like the Fourth Cause of Action, the viability of Plaintiffs' Sixth and Eighth Causes of Action all largely depend on sufficiency of their allegations setting forth Plaintiffs' allegedly fraudulent conduct and whether the investment scheme at issue qualifies as the sale of a security.  Those causes of action survive Defendants' challenge for the same reasons that Plaintiffs' arguments as to the Fourth Cause of Action were rejected as set forth above.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 21) is GRANTED as to the Third Cause of Action to the extent it extends to Defendant Merri.  The Motion is otherwise DENIED in its entirety.  Plaintiffs may amend their Third Cause of Action, should they choose to do so, not later than twenty (20) days after the date this Memorandum and Order is electronically filed.  If no amended complaint is timely filed, the cause of action dismissed by virtue of this Order will be deemed dismissed with prejudice and no further notice to the parties.

IT IS SO ORDERED.

Dated:  May 2, 2019

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE